<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

**FILED**
JAMES J. WALDRON, CLERK

June 1, 2007

U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY: <u>s/Elizabeth Grassia</u>, Deputy

_____

IN RE:                                                   :    CHAPTER 7
                                                         :
SHARON M. FOX,                                           :    CASE NO. 06-12410 (GMB)
                                                         :
                              Debtor.                    :    <u>OPINION</u>
_____:

APPEARANCES:    Steven N. Taieb, Esquire
                Ramblewood Center
                1155 Route 73, Suite 11
                Mt. Laurel, NJ 08054
                Attorney for Debtor

                Robert J. Schneider, Esquire
                Michael A. Artis, Esquire
                Trial Attorneys
                United States Department of Justice
                Office of the United States Trustee
                Kelly Beaudin Stapleton, Esquire
                United States Trustee, Region 3
                One Newark Center, Suite 2100
                Newark, NJ 07102

This matter has come before the Court on the Motion of the Debtor seeking a determination that "means testing" under 11 U.S.C. § 707(b) is not applicable to cases converted from chapter 13 to chapter 7.

I.    <u>JURISDICTION</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a), and the Standing Order of the United States District Court for the District of New Jersey dated

July 23, 1984, referring all bankruptcy cases to the Bankruptcy Court. Venue of this case is proper in the District of New Jersey pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This is a Contested Matter under Federal Rule of Bankruptcy Procedure 9014.

II.   FACTS

The facts in this case are not in dispute. The Debtor, Sharon M. Fox, filed a case under chapter 13 on March 27, 2006 and her plan was confirmed on May 17, 2006 at $410.00 for 60 months. At the time her case was filed in March 2006, Debtor had been employed as a processing supervisor at Aurora Financial for five years and her gross salary was $4,750 per month, or $57,000 a year. Her Statement of Financial Affairs (SOFA) indicates that she earned $49,380 in wages in 2005 and $45,175 in wages in 2004. At the time she filed her petition, she duly filed her schedules and the required means testing for a debtor in a chapter 13, the Form B22C.

During the pendency of her chapter 13 case, on June 28, 2006, the Debtor was laid off from her position with Aurora Financial. On September 20, 2006, the Debtor filed a motion to suspend her chapter 13 Trustee payments until February 1, 2007, which was granted on October 18, 2006 and amended on October 27, 2006 to reflect that payments were extended to February 1, 2007. On February 6, 2007, the chapter 13 Trustee filed a certification stating, "[a]s of 02/02/07 debtor(s) is $4,144 in arrears in his (her) trustee payments. The debtor(s) last payment was received on 10/05/06 in the amount of $410.00." In opposition to the certification, on February 8, 2007, the Debtor filed a certification, stating, "My unemployment ran out on

2

1/2/07 and I just got hired but won't start a job until March 5, 2007.  I will try to get a payment by the end of March 2007." Shortly thereafter, on February 23, 2007, the Debtor filed a voluntary conversion to chapter 7.

Contemporaneous with the motion to convert, the Debtor filed a certification, stating:

> On March 27, 2006 I filed a Chapter 13 bankruptcy . . . and the case was confirmed at $410 a month for 59 months on May 17, 2006.  However, I got laid off on June 28, 2006 and tried to suspend payments in my Chapter 13 and an Order was issued on October 27, 2006.  I just got a job at Lourdes Medical Association paying $13.50 per hour as a medical biller.  This is a decrease of $30,000 per year compared to my old job at Aurora.  I can no longer afford to pay any trustee payments based on the substantial drop of income.  Also, my unemployment ran out the first week of January 2007 and I don't start working until March 5, 2007.  Therefore, based on the changed circumstances I need to convert to Chapter 7.

On February 26, 2007, the Clerk's office generated and served a Notice of Missing Documents and Notice of Dismissal if Documents are Not Timely Filed.  The notice indicated that the case would be dismissed unless the missing documents–Statement of Current Monthly Income and Means Test–were received by the Clerk of Court on or before March 13, 2007.

On March 1, 2007, the Debtor filed her motion to determine that means testing does not apply to cases converted to chapter 7, which is the subject of this Decision.  The United States Trustee (UST) filed opposition to the motion.  On March 26, 2007, the Court heard oral argument on the motion.  As this is a matter of first impression for this district, the Court took the matter under advisement.  Upon reviewing the papers filed regarding this motion, hearing oral argument of the parties and reviewing the facts of this case and the applicable law, the Court renders this Decision.

III.    ARGUMENTS OF THE PARTIES

    A.    Arguments of the Debtor

The Debtor argues that she is not subject to the means test because the language of § 707(b)(1) applies to a chapter 7 case "filed by an individual debtor under this Chapter." Because her case was filed under chapter 13 and then converted to chapter 7, it was not "filed" under chapter 7 and therefore the provisions of § 707(b)(1) do not apply to this case. The conversion of a case from chapter 13 to chapter 7, she argues, does not constitute the "filing" of a case under chapter 7. She cites to § 348(a) which provides that the conversion of a case from chapter 13 to chapter 7 constitutes an "Order for Relief" under chapter 7, but does not constitute the "filing" of the petition under the meaning of § 707(b)(1). Finally, Debtor argues that had Congress intended the means test to apply to a case converted to chapter 7, it would have so stated.

    B.    Arguments of the United States Trustee

The UST argues that the plain language of § 707(b) read in connection with the statute's history, purpose and design, reveals that the statute applies to all individual chapter 7 debtors who owe primarily consumer debts, regardless of whether the case was originally filed under another chapter of the Bankruptcy Code. The UST cited to legislative history from § 707(b)'s enactment in 1984 and BAPCPA's changing of the standard from a presumption in favor of discharge absent "substantial abuse" to a presumption of "abuse" of chapter 7 where the means test yields a minimum amount of monthly disposable income. The UST argued that this change reflects the legislative intent to reject the notion that debtors were entitled to a discharge as a

matter of right without regard to their ability to pay and to assure that in practice those with the ability to pay would not be entitled to chapter 7 relief.  The language of the statute, the UST posits, supports its argument: § 707(b)(2)(C)'s requirement that a debtor, "shall include a statement of the debtor's current monthly income, and the calculations that determine whether a presumption arises under [the means test] that show how each such amount is calculated," read with Interim Bankruptcy Rule 1007(b)(4), requiring all individual debtors "in" chapter 7 cases to file a Form B22A, demonstrates Congress' intent for all debtors in chapter 7–including those debtors who convert their chapter 13 case to one under chapter 7–to satisfy the means test requirements under § 707(b).

       The UST also points to § 342(d) which requires, "[i]n a case under chapter 7 . . . in which the debtor is an individual and in which the presumption of abuse arises under section 707(b), the clerk shall give written notice to all creditors not later than 10 days after the date of filing of the petition that the presumption of abuse has arisen."  Section 707(b)(3), which directs the courts to consider whether the case is an 'abuse' of chapter 7 based on other factors, the UST argues, supports its position because § 707(b)(3) must be satisfied if no presumption of abuse arises based on the means test, or if the presumption is rebutted.  The UST also contends that the only exception to the means testing requirement in chapter 7 was created in § 707(b)(2)(D) for certain disabled combat veterans who primarily incurred indebtedness while on active duty or performing a homeland defense activity.

       The UST relied heavily on the recent decision of a bankruptcy court in Rhode Island, <u>In re Perfetto</u>, 361 B.R. 27 (Bankr. D.R.I. 2007), in which the court decided this very issue, ruling in favor of the UST.

IV.    DISCUSSION

Whether the Debtor must file a Form B22A turns on a construction of the language of § 707(b) and whether, having converted her case from one under chapter 13 to one under chapter 7, the Debtor is now subject to the means test.  The court will undertake to analyze the language of § 707(b) and the relevant statutory construction case law.

First, the task of resolving a dispute over the meaning of a statute begins with the language of the statute itself.  United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (citing Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985)).  The Supreme Court has instructed that, "when the statute's language is plain, the sole function of the court—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Lamie v. U.S. Trustee, 540 U.S. 526, 533 (2004); Ron Pair, 489 U.S. at 241 (citing Caminetti v. United States, 242 U.S. 470, 485 (1917)).  This proposition derives from the understanding "that Congress 'says in a statute what it means and means in a statute what it says there.'"  Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 6 (2000) (citing Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992)).

Section § 707(b)(1) provides authority for courts to dismiss a case, "*filed* by an individual debtor under this chapter . . . or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter."  11 U.S.C. § 707(b)(1) (emphasis added).  The language is explicit that the authority of the courts to dismiss or convert extends to debtors who "file[]" cases under "this chapter," which plainly means chapter 7.  This Court cannot find ambiguity in such clear and explicit language.   There is nothing in the language of § 707(b)(1) that indicates that this

section was meant to apply to debtors who convert a case under either chapter 13 or chapter 11 to chapter 7.

Section 707(b) is plain in its mandate that a debtor "filing" in chapter 7 be subject to the means test computations. Throughout § 707, reference is made to a debtor's "filing" of a case under chapter 7. Never does the language make reference to a debtor's conversion of a case under another chapter to chapter 7 or subject the debtor to the means test if the debtor is "in" a chapter 7 case. The language is unambiguous that the means test computation required under § 707(b)(2) is required for debtors who have "filed" a case under chapter 7.

The fact that the section provides for the dismissal *or conversion to chapter 13* or 11 where the court finds abuse is an indication that the drafters were contemplating the effect of conversion specifically in this subsection. If the drafters intended for cases converted to chapter 7 to be subject to this new requirement, they did not say so in the clear language of the section. Moreover, it would also seem counterintuitive to read the section to apply to those cases converted from chapter 13 where the section provides for conversion to chapter 13 as a possible consequence of a finding of "abuse."

Section 707(b) is replete with references to the "filing" of a case under chapter 7. Section 707(b)(2), the subsection which provides the complicated calculation which constitutes the "means test," supports this reading. While § 707(b)(2) does not make reference to a debtor's filing, it does provide in § 707(b)(2)(A)(ii)(I) that the debtor's monthly expenses shall be determined by IRS standards, "as in effect on the date of the *order for relief*. . . ." The commencement of a case under a chapter in the Bankruptcy Code, the filing date under § 301(a), constitutes the order for relief under that chapter pursuant to § 301(b). A logical and plain

reading of § 707(b)(2)(A)(ii)(I) would make the point of reference for the determination of the debtor's monthly expenses the date the petition was filed, not the date of conversion.

Section 348(b) supports this reading. Section 348(b) defines the sections where "order for relief" refers to the conversion of a case. See 11 U.S.C. § 348(b).[1] Section 707(b) is not listed, therefore reading the statute as a whole indicates that the meaning of "order for relief" in § 707(b)(2)(A)(ii)(I) would refer to the date of the filing of a petition under chapter 7 and not the date of the conversion of a case under another chapter to chapter 7.

Therefore, while the drafters provided in § 707(b)(1) that consensual conversion could be a consequence of the presumption of abuse under the means test, nowhere in the section is there an indication that the drafters meant to apply the means test to debtors who commence their case under another chapter and subsequently convert their case to chapter 7. That conversion was on the mind of the drafters and yet they specifically limited § 707(b) to cases "filed under [chapter 7]," is enlightening. This reading is consistent with similar language found in §§ 707(b)(3), (b)(4)(A), (c)(2) and (c)(3).[2]

---

[1] Section 348(b) reads:

> Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b), 728(a), 728(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1146(a), 1146(b), 1201(a), 1221, 1228(a), 1301(a), and 1305(a) of this title, "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, 1208, or 1307 of this title means the conversion of such case to such chapter.

11 U.S.C. § 348(b) (2006).

[2] Section 707(b)(3) requires courts to examine cases where the presumption of abuse does not arise as a consequence of the means test under § 707(b)(2)(A) or the presumption is rebutted under § 707(b)(2)(B), in determining whether the granting of relief would be an abuse of

8

The UST argued that the Debtor must be required to file a Form B22A because BAPCPA in § 707(b)(2)(C) requires debtors as part of the schedule of current income and expenditures required under § 521 to file a statement of the debtor's monthly income and the calculations that determine whether a presumption arises under subparagraph (A)(I) that show how each amount is calculated. That provision, the UST argued, is consistent with Interim Bankruptcy Rule 1007(b)(4), which requires a debtor "*in* a chapter 7 case" to file a statement of current monthly income as prescribed by the appropriate Official Form. If the debtor's currently monthly income is greater than the applicable median family income for the applicable state and household size, the debtor must prepare the calculations in accordance with § 707(b)—the means test—as

---

chapter 7. Again, reference is made to a debtor's filing: "the court shall consider whether the debtor *filed* the petition in bad faith." 11 U.S.C. § 707(b)(3) (2006) (emphasis added). The plain language of this section provides that the court shall look to whether the debtor's filing of a petition would constitute an abuse of the provisions of chapter 7. The emphasis in § 707 is on a debtor's filing of a chapter 7 case constituting an abuse of the relief afforded under chapter 7, not the conversion of a case from chapter 13 to chapter 7.
   Section § 707(b)(4)(A) provides authority for the courts to order the attorney for the debtor to reimburse the trustee for reasonable costs in prosecuting a § 707(b) motion brought by the trustee if the court grants the motion and "finds that the action of the attorney for the debtor *in filing a case under this chapter* violated rule 9011." 11 U.S.C. § 707(b)(4)(A) (2006) (emphasis added). This language supports that the provisions of § 707(b) were intended to apply to debtors who file cases under chapter 7 constituting an abuse and, specifically, holding debtors' attorneys liable for abusive filings under chapter 7. There is nothing in the language of this subsection that supports any argument to the contrary.
   Section 707(c)(2) gives courts the authority to dismiss cases when it is in the best interest of the victim of a crime of violence or drug trafficking crime, "*filed under this chapter* by a debtor who is an individual if such individual was convicted of such crime." 11 U.S.C. § 707(c)(2) (2006) (emphasis added). This subsection plainly provides for dismissal of cases of debtors filed in chapter 7 and makes no mention of cases converted from another chapter.
   Section 707(c)(3) provides an exception to the provisions of § 707(c)(2) to prohibit the dismissal of a case "if the debtor establishes by a preponderance of the evidence that *the filing of a case under this chapter* is necessary to satisfy a claim for a domestic support obligation." 11 U.S.C. § 707(c)(3) (2006) (emphasis added). The language explicitly applies to debtors who file a case under chapter 7, which supports that the presumption of abuse provisions of § 707(b) apply to cases filed under chapter 7 and not to those converted from another chapter.

9

prescribed by the appropriate Form B22A. The UST argues that the language "in a chapter 7 case" should be read to include those cases filed under chapter 13 and subsequently converted to chapter 7 and that expansive language should be used to clarify the language in § 707(b)(1) to include cases converted from other chapters.

The substantive difference between the Form B22A and the B22C, the UST argues, reflects the differences between chapters 7 and 13 and the disposable income calculations under each chapter. Moreover, the Trustee asserts, there is a key difference between the two forms: Form B22A contains a box at the top to indicate whether the presumption of abuse arises, which the clerk's office uses as the basis to give creditors notice as required by § 342(d). These differences support the argument, the UST posits, that because the forms are different and the Rule contains "in a chapter 7" language, Congress intended for any debtor in a chapter 7 case must be subject to the means test.

Rules do not create substantive law. The fact that Interim Rule 1007(b)(4) indicates that it applies to debtors "in" a chapter 7 case does not enhance the position of the UST. This Court will not apply the words of a rule to contradict and supercede the unambiguous words of a statute. To do such would violate principles of federalism:

> [W]hen Congress accorded the Supreme Court authority to promulgate the Bankruptcy Rules, it stated "[s]uch shall not abridge, enlarge, or modify any substantive right" (20 U.S.C. § 2075). Thus, "[a]s a general matter, the Code defines the creation, alteration or elimination of substantive rights but the Bankruptcy Rules define the process by which these privileges may be effected."

In re Fesq, 153 F.3d 113, 116 (3d Cir. 1998) (citations omitted).

Moreover, the Fesq court noted that to read the rule in issue in that case, Rule 9024, "to read a strained meaning" from the statute at issue, 11 U.S.C. § 1330(a), "solely on the basis of Rule 9024's language also runs afoul of separation of powers principles." Fesq, 153 F.3d at 117. Indeed, in this case, to read the more broad and potentially ambiguous "in a chapter 7" language of Rule 1007(b)(4) to modify and alter the meaning of the unambiguous language of § 707(b)(1) would lead to a similar result.

The UST points to the notice provisions of § 342(d) as further support, arguing that the fact that the B22A has a check box as a cross reference to the required notice under § 342(d) means that the B22A was designed for chapter 7 cases and the Debtor having filed a Form B22C for her chapter 13 case is insufficient to satisfy § 342(d). This argument is contradicted by the very language of § 342(d) which is even more specific than § 707(b):

> In a case under chapter 7 of this title in which the debtor is an individual and in which the presumption of abuse arises under section 707(b), the clerk shall give written notice to all creditors not later than 10 days after *the date of the filing of the petition* that the presumption of abuse has arisen.

11 U.S.C. § 342(d) (2006) (emphasis added).

The UST asks this Court to ignore the clear and unambiguous word "filed"–which repeatedly appears in §§ 707 and 342–without any sound basis in the doctrine of statutory construction.

As the Third Circuit has noted, "[i]ndeed, one of the basic canons of statutory construction is that identical terms within an Act bear the same meaning." Cohen v. del la Cruz, 106 F.3d 52, 57 (3d Cir. 1997). The UST has not shown that "filed" means something different in § 707(b)(1) than it means elsewhere in the Code. Had Congress intended for the means test to

11

apply to all cases "in" chapter 7, it could have used any of multiple terms used elsewhere in the Code to effect that intention, such as "filed or converted to chapter 7" or "upon an order for relief," which would include either a chapter 7 filing or a conversion order, or simply "in a chapter 7 case."

Moreover, to read the statute as the UST would contend would lead to an absurd result. Section 707(b)(2)(A)(I) sets out the means test calculation and provides that the court "shall presume abuse exists if the debtor's current monthly income. . . ." The entire calculation is based in large part on the debtor's current monthly income. "Current monthly income" as defined in § 101(10)(A) is based on "income . . . derived during the 6-month period ending on–the last day of the calendar month immediately preceding the date of *commencement of the case*."[3] Therefore, the calculation directs the disclosure of financial information for the six months before the filing, and not the date of conversion or the order for relief. In cases such as this one where the Debtor converted her case after several months in chapter 13, to require the filing of a different form to analyze the financial condition of the debtor for six months prior to the *filing* of the case would be to require information potentially impertinent to the issue of abuse in a chapter 7 case months later.

The crux of the UST's argument is that because the legislative history to BAPCPA evinced a desire to change the standard for dismissal and provide strengthened controls on the "abusive use of chapter 7," to read § 707(b)(1) to limit the means test to debtors who file under

---

[3] The subsection also provides that the 6-month period for determining "current monthly income" may end on the date current income is determined by the court if the debtor does not file required schedules. The UST does not dispute that the Debtor has duly filed the required schedules. At issue is whether the Debtor must file a Form B22A and, thus, be again subjected to the means test.

chapter 7 would provide for a "loophole" that Congress surely did not intend to create. This Court will not attempt to divine the intent of Congress by looking to legislative history where the language is plain and unambiguous. This Court is persuaded that the intent of Congress, as evidenced by the clear and unambiguous language of the statute, § 707(b)(1), was to apply the means test to debtors who "file[]" a case under chapter 7.

Even if this Court were to consider the language to be ambiguous, the UST has not presented any evidence in the legislative history to support the theory that § 707(b)(1) was meant to apply to debtors who file good-faith chapter 13 cases, have an extreme change in circumstances during the pendency of their cases and then convert to chapter 7. Such a reading of the legislative history to the 2005 Act would require bankruptcy courts to abandon long-standing policy and goals of bankruptcy and the "fresh start" for the "honest but unfortunate debtor." Marrama v. Citizens Bank, 127 S. Ct. 1105, 1107 (2007) (citing Grogan v. Garner, 498 U.S. 279 (1991)). The UST has not convinced this Court that Congress intended in BAPCPA to change that long-standing purpose of bankruptcy relief or that the literal interpretation and application of "filed" in § 707(b)(1) would run afoul of Congressional intent. Therefore, this Court is persuaded that it should apply the literal meaning of the statute as not producing a result demonstrably at odds with the intentions of the drafters.

The UST relied heavily on the recent non-precedential decision in Perfetto, 361 B.R. 21, examining this very issue as one of first impression. This Court, however, is not inclined to follow Perfetto for the reasons which follow.

First, the court in Perfetto rejected a "literalist" interpretation of what it called, "this goal driven example of legislative intemperance." Perfetto, 361 B.R. at 29. The court cited two

13

exceptions to the plain meaning rule of statutory construction: "when literal interpretation of a statute would lead to a result that is contrary to congressional intent," and "when literal interpretation of a statute would lead to an absurd result." Id. at 29. In analyzing § 707(b) "sensibly," the court concluded that the term "filed under" in § 707(b) applies to cases converted to chapter 7 as § 348(a) provides that a converted case is deemed to have been filed under the chapter to which it is converted, notwithstanding that § 348(a) specifically "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief," except under § 348(b) or (c). As described supra, § 348(a) specifically excepts certain provisions from its general rule that the conversion of a case does not change the date of the filing of the petition, the commencement of the case or the order for relief, however § 707(b) is not one of the provisions so excepted. This Court will not extend the applicability of the exception provided in § 348(a) where not specifically stated by the statute.[4]

Secondly, the court held that "it was clearly the intent of the drafters that the Form B22A be required upon conversion," the court reasoned, "so that a review of the Debtor's financial condition could be conducted within the renewed filing period for motions under 707(b)." Perfetto, 361 B.R. at 31 (italics added). The court looked to Interim Rule 1019(2) which

---

[4] The cases cited by the Perfetto court for the proposition that, "it appears to be well settled that when they do convert, debtors are deemed to have 'filed under' the converted to chapter, as of the original petition was filed," do not consequently stand for the proposition that, "a converted case is deemed to have been filed under the chapter to which it is converted." Perfetto, 361 B.R. at 30–31. Whether or not Congress intended the date of a particular provision's effect to relate back to the date of the filing of the petition or the date of conversion is not tantamount to indicating an intent for the case to have been deemed to have been *filed under* the *converted to* chapter when § 348(a) specifically provides for the contrary and only provides an exception for certain sections of the Code, but does not specifically provide for such an exception for § 707(b). None of the cases cited by the Perfetto court support its conclusion.

14

provides, according to the Perfetto court, "a new time period for substantial abuse motions under Section 707(b) in cases converted from Chapter 13 to Chapter 7." Id. at 31. Notwithstanding that the new standard under BAPCPA is "abuse" and no longer "substantial abuse," the Perfetto court reads Congressional intent from the rules, when the rules are not written by Congress. As discussed supra at 10–11, this Court will not divine Congressional intent from a rule as it is satisfied that the plain language of the statute trumps an ambiguous Interim Rule.

The Perfetto court acknowledged the "incongruous" and indeed "absurd" result where, in cases such as this one, the debtor converts to chapter 7 months after filing a petition under chapter 13 because BAPCPA instructs to focus on the 6-month period prior to the chapter 13 filing and because the filing of a Form B22A upon the conversion to chapter 7 would not present an accurate picture of the debtor's current and relevant financial circumstances. Perfetto, 361 B.R. at 31; see also supra at 12–13. The court held that it would devise its own test, for cases such as this one, relying on a totality of the circumstances approach:

> Such incongruous results appear throughout BAPCPA, creating the potential for many anomalies that were either never considered or completely ignored by the architects of this law. Left to deal with such issues, but with no guidance provided by the seemingly myopic drafters, courts are and will be required to fashion common sense approaches to achieve order out of the confusion unwittingly created by Congress. To that end, in anticipation of and acknowledging the forgoing caveat, this Court will consider the treatment of those cases on an ad hoc basis, if and when they are filed, and only upon careful consideration of the totality of the circumstances in each case.

Perfetto, 361 B.R. at 31.

The Perfetto court did not have to resort to its newly created test, however, because that case involved a conversion to chapter 7 within two weeks of the filing of the petition under

chapter 13, which the court found, "does not spawn any of the feared inconsistencies lurking in BAPCPA," and therefore ordered the debtor to file the Form B22A within 10 days or be subject to automatic dismissal of the case.

Notwithstanding the fact that Perfetto is factually dissimilar from the current case, this Court cannot find any support in the language of § 707(b)(1) to conclude that Congress intended to grant discretion to the bankruptcy courts, under a totality of the circumstances approach as promoted by the Perfetto court, to determine whether debtors converting to chapter 7 would be subject to the "abuse" provisions under § 707(b)(1). On the contrary, the language is plain that § 707(b)(1) was intended to apply to cases "filed" under chapter 7. Therefore, this Court will not follow the rationale or the holding of the Perfetto court.

It should be noted that this Court is persuaded that the UST's argument that to read § 707(b)(1) not to include those debtors who file under chapter 13 and subsequently convert their cases to chapter 7 as creating an unintended "loophole" is specious. There are separate provisions in the Code for "catching" bad-faith filers[5] and, as the recent Supreme Court decision instructed, there is ample authority for the dismissal of cases of debtors who convert their cases in bad faith. See Marrama v. Citizens Bank, 127 S. Ct. at 1111–12. This Court is satisfied that Congress has separately provided for debtors who file cases under chapter 13 in bad faith or convert their cases in bad faith and that the abuse provisions of § 707(b) are clearly intended for those debtors who file their cases under chapter 7.

---

[5] See, e.g., 11 U.S.C. § 1307(c) (2006) (providing for the conversion or dismissal of a case filed under chapter 13 "for cause," and providing examples of "cause").

V.     CONCLUSION

     This Court holds that the Debtor, having converted her case from one under chapter 13 to one under chapter 7, is not subject to the means test under the plain language of § 707(b)(1) and is, thus, not required to file a Form B22A under Rule 1007(b)(4).

     The Debtor shall submit an Order to the Court in accordance with this Opinion.

                                                            BY THE COURT:

                                                            _____
                                                            GLORIA M. BURNS
                                                            United States Bankruptcy Judge